## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAVAUGHN M. REDMOND,

      Plaintiff,                             Case No. 10-12695

v.                                        Hon. Gerald E. Rosen

DAVID SANDERS, IAN SEVERY,
ANTJUAN SPIGNER, and
CITY OF DETROIT,

      Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____ March 13, 2012 _____

PRESENT:  Honorable Gerald E. Rosen
                          Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff Javaughn M. Redmond commenced this action in this Court on July 8,

2010, asserting federal constitutional and state-law claims arising from his June 24, 2009

arrest by the three Defendant City of Detroit police officers, the attendant search of his

vehicle, and his subsequent criminal prosecution on state-law charges of being a felon in

possession of a firearm and carrying a concealed weapon.  This Court's subject matter

jurisdiction rests upon Plaintiff's assertion of claims under 42 U.S.C. § 1983 alleging

violations of his rights under the U.S. Constitution.  *See* 28 U.S.C. § 1331.

Through the present motion filed on April 30, 2011, the Defendant police officers and the City of Detroit seek an award of summary judgment in their favor on the federal § 1983 claims asserted in Plaintiff's complaint.[1]  In support of this motion, Defendants principally argue that Plaintiff's claims are defeated by the doctrine of collateral estoppel (or issue preclusion), in light of a state court determination at a preliminary hearing that there was probable cause for Plaintiff's arrest and prosecution on weapons charges. Defendants further contend that the inventory search of Plaintiff's vehicle following his arrest — during which the Defendant police officers found a loaded handgun that gave rise to the weapons charges brought against Plaintiff — was lawful, or that, at a minimum, it was objectively reasonable for the Defendant officers to conduct this search.

Defendants' motion has been fully briefed by the parties.  Having reviewed Defendants' motion, Plaintiff's response, and the accompanying exhibits submitted by the parties, the Court finds that the relevant allegations, facts, and legal issues are adequately presented in these written materials, and that oral argument would not aid the decisional process.  Accordingly, the Court will decide Defendants' motion "on the briefs."  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  This opinion and order sets forth the Court's rulings on this motion.

---

[1]Defendants' motion makes only passing reference to the state-law claims asserted in Plaintiff's complaint, and this reference is further limited to only one of the arguments advanced in the motion.  In light of Defendants' cursory effort to develop arguments as to why Plaintiff's state-law claims should not withstand summary judgment, the Court's discussion and analysis in this opinion is largely confined to Plaintiff's federal § 1983 claims.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

At around 1:50 a.m. on June 24, 2009, the Defendant City of Detroit police officers — David Sanders, Ian Severy, and Antjuan Spigner — were on routine patrol in a marked scout car when they observed a gold Chevrolet Impala that appeared to have an excessively tinted front driver's side window.  The officers activated the overhead lights and siren on their scout car and stopped the Impala, which was being operated by Plaintiff Javaughn M. Redmond.  According to Plaintiff, this traffic stop occurred at or near the location of Plaintiff's business, a barbershop.

After the stop, all three Defendant officers exited their scout car and approached Plaintiff's vehicle, with Officer Severy directing Plaintiff to place his hands in the air.  According to the officers, Plaintiff initially complied, but then was observed reaching down toward the middle of the front seat of his car.  At that point, Officer Severy instructed Plaintiff to exit his vehicle, conducted a "cursory pat down for weapons," and placed Plaintiff in handcuffs.  (Defendants' Motion, Ex. 2, Severy Police Report.)

As Plaintiff remained handcuffed and outside his car, Officer Severy asked him where he kept the vehicle's registration and proof of insurance, and Plaintiff responded that these documents could be found in the car's glovebox.  Upon checking the glovebox, Officer Sanders found no vehicle registration, and an insurance binder in the glovebox revealed that Plaintiff's car insurance had lapsed.[2]  Accordingly, Plaintiff was issued

---

[2]Plaintiff has acknowledged that his "vehicle insurance coverage had expired" as of the date of the traffic stop.  (*See* Plaintiff's Response Br. at 2.)

3

traffic citations for unlawfully tinted windows and for operating a motor vehicle without insurance,[3] and the Defendant officers decided to impound Plaintiff's car because it had been illegally operated on the roadway without insurance.

In light of the decision to impound Plaintiff's vehicle, Officer Sanders performed an inventory search of the car. He found nothing in the passenger compartment of the car, but upon opening the trunk, Officer Sanders discovered a loaded handgun. Plaintiff acknowledged to the Defendant officers that he did not have a permit to carry a concealed weapon, and the officers placed him under arrest. Plaintiff subsequently was charged with being a felon in possession of a firearm, carrying a concealed weapon, and an additional weapons offense based on his status as a repeat offender.

On August 20, 2009, a preliminary examination was held before a state district court judge, with the prosecution calling Officer Sanders as a witness and Plaintiff presenting the testimony of his wife, Tonie Shepherd. During cross-examination by Plaintiff's counsel, Officer Sanders was shown photographs of a Chevrolet Impala, and he acknowledged that the vehicle shown in the pictures appeared to have "no tint on the window." (Plaintiff's Response, Ex. C, Preliminary Exam. Tr. at 11.) Nonetheless, Officer Sanders was unable to say whether the car depicted in the photographs was the same vehicle he and his fellow officers had stopped on June 24, 2009, (*see id.* at 10, 15-16), and he testified repeatedly that the car pulled over that night had excessively tinted

---

[3]The record does not disclose the final disposition of these traffic citations — *e.g.,* whether Plaintiff challenged them or simply paid the applicable fines.

4

windows, (*see id.* at 5-7, 9-11).  For her part, Ms. Shepherd testified that the car depicted

in the photographs was, in fact, Plaintiff's vehicle, and that this car had no tint on its front

windows during the time Plaintiff owned it.  (*See id.* at 18-19.)  Upon hearing the

testimony of Officer Sanders and Ms. Shepherd and the arguments of counsel, the state

district court found that the testimony gave rise to "question[s] of fact for the trier of

fact," and concluded that there was probable cause to prosecute Plaintiff for the three

charged weapon offenses.  (*Id.* at 23.)

Before the case proceeded to trial, however, Plaintiff and his counsel moved to

suppress the handgun that was found in Plaintiff's vehicle on the night of his arrest,

arguing that this discovery was the product of an illegal inventory search.  In an opinion

issued on October 30, 2009, a state circuit court judge granted Plaintiff's motion, finding

(i) that "the Detroit Police Department policy directive on the impounding of vehicles is

unconstitutionally vague," and (ii) that the decision of the Defendant officers to impound

Plaintiff's vehicle was "unreasonable and arbitrary," in light of the officers' evident lack

of knowledge of a provision in the policy directive that granted them the discretion not to

impound the vehicle, but to instead ask Plaintiff whether his car should be left parked at

the roadside.  (Plaintiff's Response, Ex. F, State Circuit Court Op. at 4-5.)

Following this state court ruling, the charges against Plaintiff were dismissed.

This suit followed on July 8, 2010, with Plaintiff asserting federal constitutional and

state-law challenges to the Defendant officers' June 24, 2009 stop and search of his

vehicle, his ensuing arrest and imprisonment, and his criminal prosecution on weapons

5

charges.[4]

# III.  ANALYSIS

## A.  The Standards Governing Defendants' Motion

Through the present motion, the three Defendant police officers and their municipal employer, the Defendant City of Detroit, seek an award of summary judgment in their favor on Plaintiff's federal claims under 42 U.S.C. § 1983, as well as (perhaps) some of Plaintiff's state-law claims.[5]  Under the pertinent Federal Rule, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought," and "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

---

[4]Plaintiff's complaint also includes allegations concerning Plaintiff's alleged arrest and prosecution for disorderly conduct in December of 2009, (*see* Complaint at ¶¶ 32-33, 37(f), 58, 61), but the record is otherwise silent and devoid of evidence as to the facts and circumstances surrounding this arrest and prosecution.

[5]As noted earlier, the references in Defendants' motion to Plaintiff's state-law claims are fleeting at best.  Indeed, this motion fails to suggest any ground whatsoever for the Court to award summary judgment in Defendants' favor as to Plaintiff's state-law claim of intentional infliction of emotional distress.

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.    Plaintiff's Challenge to the June 24, 2009 Traffic Stop of His Vehicle Is Precluded by the State Court's Determination of Probable Cause at Plaintiff's Preliminary Examination.**

In seeking summary judgment in their favor on Plaintiff's federal § 1983 claims, Defendants appeal first and foremost to the doctrine of collateral estoppel, or issue preclusion. As Defendants observe, to the extent that Plaintiff challenges the lawfulness of the June 24, 2009 traffic stop of his vehicle, his arrest in the course of this traffic stop, or his ensuing criminal prosecution, each of these theories of recovery requires a showing that the challenged action was taken without probable cause. *See Fox v. DeSoto,* 489

7

F.3d 227, 237 (6th Cir. 2007) (explaining that a Fourth Amendment claim of malicious

prosecution "fails when there was probable cause to prosecute"); *Gaddis v. Redford*

*Township,* 364 F.3d 763, 770-71 & n.6 (6th Cir. 2004) (holding that a traffic stop

comports with the Fourth Amendment if the police "have probable cause to believe that a

civil traffic violation has occurred"); *Criss v. City of Kent,* 867 F.2d 259, 262 (6th Cir.

1988) (holding that an "arrest without a warrant does not violate the Fourth Amendment

if probable cause exists for the arresting officer's belief that a suspect has violated or is

violating the law"). Yet, at an August 20, 2009 preliminary examination following

Plaintiff's arrest, a state district court judge determined that there was probable cause to

prosecute Plaintiff on weapons charges stemming from the discovery of a loaded handgun

in his vehicle during the June 24, 2009 traffic stop. It follows, in Defendants' view, that

Plaintiff is collaterally estopped from relitigating the existence of probable cause in the

present suit.[6]

    As Plaintiff points out in his response to Defendants' motion, however, the

application of collateral estoppel here is not quite so simple and straightforward. It is

true, as Defendants observe, that a determination of probable cause at a state court

---

[6]The Court notes that Defendants make no effort in their motion to appeal to the potentially preclusive effect of the traffic citation issued to Plaintiff for operating a vehicle with excessively tinted windows. Arguably, if Plaintiff simply paid the fine for this offense without challenging the basis for the issuance of this citation, he would be precluded from relitigating the issue of probable cause for the traffic stop of his vehicle. *See Leach v. Manning,* 105 F. Supp.2d 707, 712-13 (E.D. Mich. 2000). Because Defendants have not advanced this argument, and because the record does not disclose the disposition of the traffic citation issued to Plaintiff for excessively tinted windows, the Court need not resolve this question.

preliminary hearing generally is entitled to preclusive effect in a subsequent § 1983 suit alleging malicious prosecution in violation of the Fourth Amendment. *See Coogan v. City of Wixom,* 820 F.2d 170, 175 (6th Cir. 1987), *overruled on other grounds by Franz v. Village of Bradford,* 245 F.3d 869, 874 (6th Cir. 2001). Yet, this general rule applies only if the malicious prosecution claim implicates the "same issue" that was decided in the earlier state court proceeding. *See Darrah v. City of Oak Park,* 255 F.3d 301, 311 (6th Cir. 2001). The court in *Darrah* found that this requisite "identity of the issues" was lacking in that case, where the plaintiff's § 1983 claim of malicious prosecution was predicated on allegations that the defendant police officer "made materially false statements to the state judge that formed the basis of that court's probable cause determination." *Darrah,* 255 F.3d at 311. Under these circumstances, the court reasoned that the § 1983 plaintiff was not "attempting to relitigate the identical issue of whether probable cause exists; rather, [she was] arguing that the [defendant] officer[] misstated material facts in order to establish probable cause at the state level." 255 F.3d at 311; *see also Hinchman v. Moore,* 312 F.3d 198, 202-03 (6th Cir. 2002) (following *Darrah* in holding that a state court's finding of probable cause at a preliminary hearing did not preclude the plaintiff in that case from litigating the question whether the defendant detectives had "supplied the prosecutor's office and the state court with a false version of the facts").[7]

---

[7]Although the court in *Hinchman* followed the Sixth Circuit's earlier ruling in *Darrah,* it did so only reluctantly:

9

Plaintiff here contends that Defendants' appeal to collateral estoppel suffers from this same divergence of issues.  In particular, while Defendants seek to confer preclusive effect upon the state court judge's finding of probable cause at the August 20, 2009 preliminary examination, Plaintiff argues that he, like the plaintiffs in *Darrah* and *Hinchman,* is pursuing an issue distinct from the existence of probable cause — namely, whether Officer Sanders "supplied the [state] court with a false version of the facts" by "fabricat[ing]" a claim that Plaintiff's vehicle had illegally tinted windows.  (Plaintiff's Response Br. at 8.)  It follows, in Plaintiff's view, that Defendants' appeal to collateral estoppel should be rejected, just as it was in *Darrah* and *Hinchman.*

Plaintiff's argument, however, overlooks an important distinction between the facts presented in *Darrah* and *Hinchman* and the record in this case.  Simply stated, the veracity of Officer Sanders' claim that Plaintiff's car had excessively tinted windows was ***squarely and expressly litigated*** at the state court preliminary hearing, under a body of evidence that is essentially indistinguishable from the record produced before this Court.  At the state court preliminary hearing, Officer Sanders was shown a series of photographs

_____

> We frankly find the logic of *Darrah's* collateral-estoppel holding questionable.  A state court judge ruling on the presence or absence of probable cause in a criminal action must necessarily take into account the veracity of the officers' statements.  At the preliminary hearing in the present case, [plaintiff] Hinchman was free to cross-examine the two defendants and to take the stand herself in an effort to discredit their testimony.  Whether or not she did so, *Darrah* allows her a second bite at the probable-cause apple, a result that is diametrically opposed to the collateral-estoppel concept.  We are bound, however, by published Sixth Circuit precedent.

*Hinchman,* 312 F.3d at 203 (citation omitted).

10

of a Chevrolet Impala that, as he himself testified, appeared to have "no tint on the window." (Plaintiff's Response, Ex. C, Preliminary Exam. Tr. at 11.) He nonetheless questioned whether the car depicted in these pictures was the same vehicle he and his fellow officers had stopped on June 24, 2009, and he insisted that the car that Plaintiff was driving that night did, in fact, have tinted windows. (*See id.* at 5-6, 9-11, 15-16.) Upon hearing this testimony, the state court judge found probable cause to prosecute Plaintiff, notwithstanding the issue raised on cross-examination of Officer Sanders regarding the tinted windows (or lack thereof) on Plaintiff's vehicle. (*See id.* at 23.)

The claim of "fabrication" that Plaintiff wishes to pursue before this Court implicates precisely the same issue and rests upon precisely the same record. In support of this claim, Plaintiff points to the deposition of Officer Sanders in this litigation, during which he purportedly "viewed the same pictures of [Plaintiff's] vehicle that were shown to him during the Preliminary Examination." (Plaintiff's Response Br. at 1-2.)[8] Just as he did at the preliminary hearing, Officer Sanders testified at his deposition that these pictures depicted a car without tinted windows. (Plaintiff's Response, Ex. B, Sanders Dep. at 9.) Officer Sanders nonetheless insisted — just as he had at the preliminary hearing — that the vehicle operated by Plaintiff on June 24, 2009 had tinted windows, and that this was the reason for the traffic stop of Plaintiff's vehicle. (*Id.* at 8-10.) This,

---

[8]To be accurate, although Plaintiff contends that Officer Sanders was shown the same photographs at his deposition and at the preliminary hearing, Officer Sanders opined at his deposition that the pictures were merely "[s]imilar," and he noted differences in details that led him to question whether the photographs were, in fact, the same as those he had viewed at the preliminary hearing. (Plaintiff's Response, Ex. B, Sanders Dep. at 9-10.)

11

then, is the basis for Plaintiff's claim of "fabrication" — *i.e.,* that Officer Sanders purportedly "observed pictures of Plaintiff's vehicle" at his deposition and "testified that no illegal tint was present" on the windows of the car. (Plaintiff's Response Br. at 5-6, 8.) Yet, Officer Sanders' deposition testimony on this point was identical to the testimony he gave at the preliminary hearing on the same subject — namely, that the photographs he was shown did not match Plaintiff's vehicle as he observed it on June 24, 2009, for the very reason that the pictures depicted a car without tinted windows.

In short, the factual issue Plaintiff has identified here, and the record giving rise to this issue, is exactly the same as the issue presented and decided at Plaintiff's preliminary hearing. Under these circumstances, the courts have recognized that the "identity of issues" element of collateral estoppel is satisfied, and that *Darrah* and *Hinchman* do not apply. In *Flowers v. City of Detroit,* No. 08-1035, 306 F. App'x 984, 987-88 (6th Cir. Jan. 16, 2009), for example, the plaintiff (like Plaintiff here) sought to avoid the preclusive effect of a state court's finding of probable cause at a preliminary hearing by pointing to the defendant police officers' alleged misstatements of facts and omissions of exculpatory evidence. The court found that the same issue had been litigated at the preliminary hearing and that "the *Darrah* exception" did not apply, explaining that the facts supporting the plaintiff's allegations of misstatements and omissions "were all brought to light at the preliminary examination." *Flowers,* 306 F. App'x at 988. Although these facts might have provided a basis for discounting the witness testimony upon which the state court based its finding of probable cause, the Sixth Circuit reasoned

12

that "[a]n imperfect witness is not the same thing as a 'false' witness" that would trigger the application of *Darrah* and overcome the preclusive effect of the state court's finding. *Flowers,* 306 F. App'x at 988; *see also Guenther v. Holmgreen,* 738 F.2d 879, 884 (7th Cir. 1984) (holding that the plaintiff's § 1983 challenge to the legality of his arrest was precluded by a finding of probable cause at a state court preliminary hearing, where "the issue of [the defendant police officer's] veracity and good faith — the linchpin of [the plaintiff's] § 1983 Fourth Amendment claim — was both raised and actually litigated in the preliminary hearing").

Similarly, in *Wallace v. County of Calhoun,* No. 1:10-cv-144, 2010 WL 1494771, at *8 (W.D. Mich. Apr. 14, 2010), the plaintiff argued that a finding of probable cause at a state court preliminary examination should not be given preclusive effect "because the evidence presented at the preliminary examination was 'false.'" The court disagreed, observing that the plaintiff's claim of "false" testimony was more properly construed as a challenge to the credibility of a complaining witness and the sufficiency of this witness's testimony to support a finding of probable cause. *Wallace,* 2010 WL 1494771, at *8. Because the state court had the opportunity to assess this complaining witness evidence in making its determination of probable cause, the federal district court found that "the issue before the state court was identical to the issue in the instant action: whether the evidence that was presented was sufficient to demonstrate probable cause." *Wallace,* 2010 WL 1494771, at *8.

Likewise, in the present case, Plaintiff's claim of "false" testimony before this

13

Court is no different from the challenge mounted by Plaintiff and his counsel at the state court preliminary examination.  Both here and in the state court proceeding, Plaintiff has sought to undermine Officer Sanders' credibility by showing him photographs of a Chevrolet Impala without tinted windows and seeking to elicit an admission that the car depicted in these photos was the same vehicle stopped by Officer Sanders and his partners on June 24, 2009.  Despite this effort to challenge the validity of the stated basis for the June 24, 2009 traffic stop of Plaintiff's vehicle, the state court found that the record was sufficient to establish probable cause to prosecute Plaintiff on the weapons charges that flowed from this traffic stop.  This state court ruling operates to preclude Plaintiff from relitigating an issue that "was actually litigated and necessarily determined," *Darrah,* 255 F.3d at 311, at Plaintiff's preliminary examination — namely, whether the Defendant officers had a proper, lawful basis for stopping Plaintiff's vehicle on June 24, 2009.

Yet, the Court cannot agree with Defendants' broader assertion (without citation to any supporting authority) that the state court's ruling at the preliminary hearing defeats Plaintiff's § 1983 claims in their entirety — *i.e.,* not only Plaintiff's challenge to the initial traffic stop of his vehicle, but also his claims arising from the inventory search of his car and the criminal charges brought against him when this inventory search uncovered a handgun in the trunk of the car.  As the foregoing discussion makes clear, the only issue raised by Plaintiff and his counsel at the state court preliminary hearing was whether Plaintiff's car truly had excessively tinted windows, such that the traffic stop of his vehicle on this basis was justified.  Plaintiff did not raise any challenge at the

14

preliminary hearing to the legality of the decision to impound his car and conduct an inventory search, and the state district court made no ruling on this issue. Instead, Plaintiff reserved this issue for litigation before the state circuit court in the context of a motion to suppress the handgun found during the inventory search of his car, and the state court ruled in his favor on this issue, leading to the dismissal of the weapons charges brought against him in the state court criminal proceeding.[9]

Under comparable circumstances, the courts have declined to confer broad preclusive effect on a state court's finding of probable cause at a preliminary hearing, but rather have limited this preclusive effect to the issues actually raised and litigated at the preliminary hearing. In *Coogan,* 820 F.2d at 175, for example, the court observed that even where a preliminary hearing affords "an opportunity for full adversary proceedings" concerning the legality of a search, seizure, or resulting criminal charges, "strategic concerns may counsel against engaging in such an exercise at the early stages of a criminal proceeding." In recognition of these strategic considerations, the courts have rejected appeals to issue preclusion where, for instance, the § 1983 plaintiff elected to

---

[9]Although Defendants seek to give preclusive effect to the state district court's determination of probable cause at the preliminary examination, Plaintiff does not contend that the state circuit court's ruling in his favor on the legality of the inventory search should be accorded preclusive effect in this suit. Presumably, this reflects Plaintiff's recognition that such state court rulings in favor of a criminal defendant typically do not satisfy all of the prerequisites for the application of issue preclusion in a subsequent § 1983 suit. *See, e.g., Kegler v. City of Livonia,* No. 97-2206, 1999 WL 133110, at *2 n.2 (6th Cir. Feb. 23, 1999) (holding that a state court ruling in favor of the § 1983 plaintiff did not have preclusive effect against the defendant police officer because, among other reasons, the defendant officer "was neither a party, nor in privity with a party, in the [state court] criminal case"); *Strutz v. Hall,* 308 F. Supp.2d 767, 775-76 (E.D. Mich. 2004) (same).

waive her right to a state court preliminary hearing in order "to preserve the issue of probable cause until she could litigate it with the benefit of discovery," *Diamond v. Howd,* 288 F.3d 932, 935-36 (6th Cir. 2002), or where the § 1983 plaintiff "had no access to the police investigative file" at the time of the state court preliminary hearing, *Golino v. City of New Haven,* 950 F.2d 864, 869-70 (2d Cir. 1991). Indeed, it would be all the more difficult in this case to conclude that the state district court's finding of probable cause should foreclose Plaintiff from challenging the legality of the inventory search of his vehicle, where the state circuit court in the very same criminal proceeding did not view itself as bound by the prior ruling of a lower state court, but instead entertained Plaintiff's challenge and ruled in his favor. *See Bourgeois v. Strawn,* 452 F. Supp.2d 696, 708 (E.D. Mich. 2006) (holding that the defendant officer in that case could not "benefit from the state district court's finding of probable cause because it was overturned by the circuit court judge"). Accordingly, the preclusive effect of the state district court's ruling at the preliminary hearing is limited to the issue actually litigated in that proceeding — namely, the legality of the traffic stop of Plaintiff's vehicle.

**C.    The Defendant Officers Did Not Violate Plaintiff's Constitutional Rights Through Their Decision to Impound Plaintiff's Car and Conduct an Inventory Search.**

Apart from his challenge to the initial traffic stop of his vehicle, Plaintiff has asserted additional § 1983 claims arising from the actions of the Defendant officers in the immediate aftermath of this traffic stop. The principal focus of these claims is the Defendant officers' decision to impound Plaintiff's vehicle and conduct an inventory

16

search of the vehicle.  In addition, Plaintiff evidently challenges the Defendant officers'
actions in removing him from his car following the traffic stop and subjecting him to a
patdown search.  Through the present motion, Defendants contend that each of these
actions was lawful, or that, in the alternative, the Defendant officers acted in an
objectively reasonable manner, such that they are shielded from liability under the
doctrine of qualified immunity.  The Court agrees with the first of these contentions, and
therefore need not address Defendants' appeal to qualified immunity.

The actions of the Defendant officers in the immediate aftermath of the traffic stop
of Plaintiff's vehicle warrant little discussion or analysis.  Although Plaintiff maintains
that the traffic stop itself was unlawful, this Court has now held that this challenge is
foreclosed by the contrary ruling of the state district court.  Once Plaintiff's car was
lawfully stopped for a traffic violation, the Defendant officers were permitted to "order
[Plaintiff] to get out of the vehicle without violating the Fourth Amendment's
proscription of unreasonable searches and seizures."  *Pennsylvania v. Mimms,* 434 U.S.
106, 111 & n.6, 98 S. Ct. 330, 333 & n.6 (1977); *see also Arizona v. Johnson,* 555 U.S.
323, 331, 129 S. Ct. 781, 786 (2009).

Next, the Defendant officers were lawfully entitled to perform a patdown search of
Plaintiff during the course of this traffic stop, provided that they had reasonable suspicion
that Plaintiff might be armed and dangerous.  *See Johnson,* 555 U.S. at 331-32, 129 S. Ct.
at 786-87.  According to Officer Sanders, the Defendant officers decided to conduct a
patdown search after they observed Plaintiff disobey their instructions to keep his hands

17

in the air as the officers approached his vehicle, and instead reach down toward the middle of the front seat of the car.  (*See* Plaintiff's Response, Ex. B, Sanders Dep. at 10-12.)  This sort of furtive movement has been held to give rise to reasonable suspicion that the individual stopped for a traffic violation is armed and dangerous, *see, e.g., United States v. McDaniel,* No. 08-3906, 371 F. App'x 617, 620 (6th Cir. Apr. 2, 2010), and Plaintiff has not cited any authority to the contrary.[10]  Finally, while Plaintiff seemingly suggests that the Defendant officers acted unlawfully in opening his car's glovebox, they did so only after Plaintiff advised them that the vehicle registration and insurance documents could be found in that location.  Given the officers' reasonable suspicion that Plaintiff was armed and dangerous, and given their observation that he appeared to reach for something in the front seat of the car despite the officers' command that he keep his hands in the air, the officers need not have allowed Plaintiff to re-enter his vehicle and retrieve the registration and insurance certificate, but instead could reasonably have looked in the location specified by Plaintiff and retrieved these documents themselves.

This leaves only the question whether the Defendant officers acted lawfully in electing to impound Plaintiff's vehicle and perform an inventory search.  In challenging the legality of these actions, Plaintiff relies entirely on the ruling of the state circuit court,

---

[10]In his response to Defendants' motion, Plaintiff evidently seeks to cast doubt on the Defendant officers' statements that they observed Plaintiff put his hands down and reach toward the center of his car as the officers approached his vehicle and ordered him to put his hands up. (*See* Plaintiff's Response Br. at 6 (characterizing Officer Sanders as "alleg[ing]" that Plaintiff attempted to conceal something, and observing that "no contraband was found in Plaintiff's front driver or passenger seat").)  Yet, Plaintiff has not cited anything in the record — whether his own testimony or any other evidence — that might call the officers' account into question.

which held that the inventory search of Plaintiff's car was unlawful on two grounds: (i) for failure of a Detroit Police Department policy directive to provide sufficient guidance to police officers as to whether a vehicle should or should not be impounded, and (ii) for failure of the Defendant officers to offer Plaintiff the option of leaving his car locked and parked at its present location, in front of or near a barbershop owned by Plaintiff. (*See* Plaintiff's Response, Ex. F, State Circuit Court Op. at 4-5.) Upon reviewing this state court ruling and the pertinent federal case law, however, the Court respectfully disagrees with the conclusion reached by the state circuit court, and instead finds that the decision to impound Plaintiff's vehicle and conduct an inventory search fully comported with the dictates of the U.S. Constitution.

First, with regard to the Defendant officers' decision to impound Plaintiff's vehicle, the state circuit court looked solely to a written Detroit Police Department policy directive as the basis for its conclusion that the Defendant officers were given insufficient guidance and "too much discretion" in determining whether it was appropriate to impound Plaintiff's car. (*Id.* at 4.) The courts have held, however, that the requisite guidance need not be set forth in written policies, and that an officer's testimony alone can suffice to establish the "existence and contours" of a police department's practices regarding the impoundment of vehicles. *United States v. Tackett,* 486 F.3d 230, 233 (6th Cir. 2007); *see also United States v. Ballard,* No. 10-3180, 432 F. App'x 553, 556-57 (6th Cir. Aug. 3, 2011); *United States v. Duncan,* 763 F.2d 220, 224 (6th Cir. 1985); *People v. Green,* 260 Mich. App. 392, 677 N.W.2d 363, 376 (2004), *overruled in part on other*

19

*grounds by People v. Anstey,* 476 Mich. 436, 719 N.W.2d 579 (2006).[11]  In *Ballard,* 432 F. App'x at 556, for example, the defendant challenged the constitutionality of an inventory search of his vehicle on the ground that the police were granted "total discretion" under a municipal ordinance in "deciding whether to impound the vehicle." While the court recognized that the ordinance in question "provide[d] officers with discretionary authority to impound a vehicle operated under a suspended license," it nonetheless rejected the defendant's claim of "unfettered discretion" in the decision to impound his car, citing the "unrebutted testimony" of the police officer who ordered the impoundment that "officers have no discretion and are required to impound the vehicle" where, as in that case, the car was being operated by an individual whose license was suspended for lack of insurance or financial responsibility.  *Ballard,* 432 F. App'x at 556-57.

---

[11]Indeed, some courts have questioned whether the lawfulness of a decision to impound a vehicle should depend upon the existence or absence of "standardized criteria" governing this decision, whether written or otherwise.  *See United States v. Coccia,* 446 F.3d 233, 238-39 (1st Cir. 2006); *see also United States v. Smith,* 522 F.3d 305, 310-15 (3d Cir. 2008).  As observed in *Coccia,* 446 F.3d at 238, the leading Supreme Court precedents governing inventory searches — namely, *South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S. Ct. 3092, 3100 (1976), and *Colorado v. Bertine,* 479 U.S. 367, 375-76, 107 S. Ct. 738, 743 (1987) — focus principally on "the need for standards to govern *inventory searches* conducted *after* a lawful impoundment," and do not hold "that an impoundment decision made without the existence of standard procedures is per se unconstitutional."  Upon surveying these Supreme Court rulings and other pertinent case law, the First Circuit held that "the existence of (and adherence to) standard procedures" is not "the sine qua non of a reasonable impound decision," and that the lawfulness of a particular decision to impound a vehicle should instead be assessed under a more general Fourth Amendment standard of reasonableness as applied to "the facts and circumstances of a given case."  *Coccia,* 446 F.3d at 238-40; *see also Smith,* 522 F.3d at 310-15 (surveying this same body of case law and electing to follow *Coccia* over a "more structured approach" that would "requir[e] that there be standardized police procedures governing impoundments").

The record here has not been particularly well-developed (by either side) regarding the grounds for the Defendant officers' decision to impound Plaintiff's vehicle and the pertinent policies and practices of the Detroit Police Department. Nonetheless, the record includes at least some evidence on this subject. Most notably, Officer Sanders testified at his deposition that the decision to impound Plaintiff's car was based on Plaintiff's failure to produce a valid, unexpired certificate of insurance, (*see* Plaintiff's Response, Ex. B, Sanders Dep. at 15, 18), and the police reports prepared by Officer Sanders and Officer Severy likewise state that Plaintiff's vehicle was impounded "for being uninsured and operated on the road[]way illegally," (*see* Defendants' Motion, Ex. 1, Sanders police report; Ex. 2, Severy police report). Officer Sanders further testified to his standard practice to impound uninsured vehicles "[i]f time permits" — *i.e.,* unless he is called to another crime scene before he can order the impound. (Sanders Dep. at 18.) Nothing in the record refutes this testimony, or otherwise suggests that Detroit police officers do not routinely impound vehicles that are stopped for traffic violations and found to be uninsured. Finally, it bears emphasis that the Defendant officers did not have the option to allow Plaintiff to drive away in his car, or to identify or contact another driver who could legally remove Plaintiff's vehicle from the public roadway on which it had been stopped — under Michigan law, a vehicle may not be operated on a public road without the required insurance, *see* Mich. Comp. Laws § 500.3102(2) (providing that a vehicle owner is "guilty of a misdemeanor" if he operates an uninsured vehicle "or permits it to be operated upon a public highway"), nor may it be operated without a valid vehicle

21

registration (which Plaintiff failed to produce during the traffic stop), *see* Mich. Comp.

Laws § 257.215 (providing that "[i]t is a misdemeanor for any person to drive or move or

for an owner knowingly to permit to be driven or moved" an unregistered vehicle).

Under analogous circumstances, the courts have consistently upheld impound

decisions as reasonable under the Fourth Amendment.  In *Ballard,* 432 F. App'x at 557,

for instance, the Sixth Circuit upheld the legality of a police officer's decision to impound

the defendant's vehicle upon discovering that the defendant was driving with a license

that had been suspended for lack of insurance or financial responsibility.  As noted above,

the officer in that case testified that he was required to impound a vehicle under these

circumstances, and the court observed that this practice was "consistent with Ohio law,"

which prohibited the operation of a vehicle owned by an individual with this sort of

license suspension.  *Ballard,* 432 F. App'x at 557.   Similarly, in *United States v. Rose,*

No. 93-5302, 1993 WL 539248, at *1, *3 (6th Cir. Dec. 29, 1993), the Sixth Circuit found

that the defendant's car was properly impounded following his arrest, where the

defendant had only a restricted license and could not legally drive the car, and where the

vehicle, if not impounded, would have remained in a shopping center parking lot "for an

indeterminate period of time."  *See also United States v. Harvey,* 16 F.3d 109, 110-12

(6th Cir. 1994) (holding that "the police lawfully exercised their discretion in deciding to

impound the [defendant's] vehicle in the absence of any licensed driver to attend to it,"

where "[n]either [the defendant] nor the other passenger could produce a driver's

license"); *United States v. Cartwright,* 630 F.3d 610, 616 (7th Cir. 2010) (upholding the

impoundment of the defendant's vehicle, based in part on the fact that "no one could have lawfully driven [the] car from the scene"); *Smith,* 552 F.3d at 314 (finding that the decision to impound the defendant's car was reasonable, where neither of the car's two occupants was available to drive the vehicle and "[t]he area in which [the police] stopped the vehicle was one in which parked vehicles were subject to being damaged, vandalized, or stolen"); *United States v. Cherry,* 436 F.3d 769, 773-74 (7th Cir. 2006) (holding that the police acted lawfully in impounding the defendant's car, where the defendant was prohibited under state law "from driving his car after the police discovered he lacked proof of insurance," and where the car "presented a public safety hazard" if left parked in its existing location); *Vega-Encarnación v. Babilonia,* 344 F.3d 37, 41 (1st Cir. 2003) ("Case law supports the view that where a driver is arrested and there is no one *immediately* on hand to take possession, the officials have a legitimate non-investigatory reason for impounding the car."); *People v. Poole,* 199 Mich. App. 261, 501 N.W.2d 265, 267 (1993) (upholding the impoundment of the defendant's vehicle, where the defendant was arrested for driving with a suspended license and his passenger lacked a valid driver's license).

Consistent with this weight of authority, the Court finds that the Defendant officers acted in accordance with the Fourth Amendment standard of reasonableness in electing to impound Plaintiff's vehicle. As in the above-cited cases, the only available alternative to impoundment here would have been to allow Plaintiff's car to remain parked by the side of a public road indefinitely (and in the wee hours of the morning), with no evident

23

prospect that anyone could lawfully retrieve this uninsured vehicle within a reasonable time.  Officer Sanders testified to his reluctance to leave the vehicle parked on the street, observing that it was necessary to "consider the crime around the area," and opining that he would hear from his sergeant and be held "responsible for the vehicle being left at that location if something is damaged."  (Sanders Dep. at 23-24.)  Against these legitimate considerations, *see Bertine,* 479 U.S. at 372, 107 S. Ct. at 741 (noting that "inventory procedures serve to protect an owner's property while it is in the custody of the police [and] to insure against claims of lost, stolen, or vandalized property"), as well as Officer Sanders' uncontested testimony that he acted consistently with his standard practice to impound uninsured vehicles, the record is utterly devoid of evidence that the Defendant officers "acted in bad faith or for the sole purpose of investigation," *Bertine,* 479 U.S. at 372, 107 S. Ct. at 741, in deciding to impound Plaintiff's vehicle.  Under these circumstances, the impoundment of Plaintiff's car was a legitimate exercise of the Defendant officers' community caretaking function, and fully comported with the dictates of the Fourth Amendment.

Plaintiff nonetheless contends — and the state circuit court agreed — that his constitutional rights were violated by virtue of the availability of an alternative to impoundment that was both reasonable under the circumstances and expressly authorized under a Detroit Police Department policy directive.  Specifically, Plaintiff points to a provision in this policy directive that, in his view, mandated that the Defendant officers seek his views as to whether his car should be left parked and locked by the side of the

24

road:

> Vehicles not needed as evidence may be left parked legally roadside at the request of the arrested owner if the following exist:
>
> 1. Ownership is not in question;
>
> 2. Vehicle can be locked;
>
> 3. No traffic hazard is created.

(Plaintiff's Response, Ex. G, Detroit Police Department Policy Directive 204.4 - 3.3.)

The state circuit court found that the Defendant officers "were unaware" of this directive, and thus "failed to inform [Plaintiff] of the policy and determine, after he was arrested on the insurance offense, whether he wanted to leave his vehicle secured and parked in front of his business." (Plaintiff's Response, Ex. F, State Circuit Court Op. at 4.)[12]  The court further held that this failure "amounted to an unreasonable and arbitrary search and seizure of [Plaintiff's] vehicle." (*Id.*)

Yet, even assuming that the Defendant officers violated a Detroit Police Department policy directive by failing to offer Plaintiff the option of leaving his car

---

[12]The Court notes that the limited record in this case does not support certain of these findings by the state circuit court. The only Defendant officer who was deposed in this case, Officer Sanders — or, at least, the only officer whose deposition testimony has been provided to the Court — stated that he was fully aware of the Detroit Police Department's policies for impounding vehicles at the time of the June 24, 2009 traffic stop of Plaintiff's car. (Sanders Dep. at 22-23.) Officer Sanders further testified that he did not learn that this traffic stop occurred at or near the front of Plaintiff's business until "after [Plaintiff] was arrested and taken to the station." (*Id.* at 18.) While this Court has no way of knowing what evidentiary materials had been furnished to the state circuit court when it made its ruling, these materials evidently differed from the record submitted by the parties in this case.

parked and locked along the side of the road,[13] there is a critical distinction between this sort of breach of local policy and a violation of Plaintiff's federal constitutional rights, and Plaintiff has failed to cite any authority that could bridge this gap. If the Defendant officers had adhered to the policy directive as Plaintiff construes it, they would have been left with the discretionary decision whether to impound Plaintiff's vehicle, or to instead honor his request to leave the car parked by the roadside. The existence of this alternative to impoundment, however, does not automatically imbue the officers' decision with a constitutional dimension, such that the officers' failure to pursue this alternative necessarily resulted in a violation of Plaintiff's Fourth Amendment rights. As the Sixth Circuit has explained, the governing Fourth Amendment "inquiry does not require a determination of whether there was in fact a need for the [police] to impound the [vehicle]; instead we are required to determine whether the . . . decision to impound was reasonable under the circumstances." *Collins v. Nagle,* 892 F.2d 489, 494 (6th Cir.

---

[13]This is a debatable assumption, on three grounds. First, in order to trigger the policy directive cited by Plaintiff, there must be no question as to ownership of the vehicle. Under the undisputed record, however, Plaintiff failed to produce a registration for the car in which he was stopped, (*see* Sanders Dep. at 17; *see also* Defendants' Motion, Ex. 1, Sanders Police Report), so it cannot be said that Plaintiff's ownership of the vehicle was established without question. Next, while the policy directive permits a vehicle to be left at the roadside at the owner's request, there is no evidence of any such request here; rather, the state circuit court's ruling rested on the premise that the Defendant officers should have affirmatively solicited Plaintiff's opinion as to what should be done with his car. Finally, even if all the conditions set forth in the policy directive are satisfied, the directive provides only that an officer "may" leave the owner's vehicle parked at the side of the road. As Officer Sanders testified, the policy directive leaves this decision "to the officer's discretion," and he cited such factors as "crime around the area" and whether the vehicle is "parked in front of [the owner's] home" as appropriate for an officer to consider in exercising this discretion. (Sanders Dep. at 23-24.)

1989).  Similarly, the First Circuit has observed that "the critical question in cases such as this is not whether the police needed to impound the vehicle in some absolute sense, or could have effected an impoundment more solicitously, but whether the decision to impound and the method chosen for implementing that decision were, under all the circumstances, within the realm of reason." *United States v. Rodriguez-Morales,* 929 F.2d 780, 786 (1st Cir. 1991).

Viewed within this proper legal framework, any arguable failure by the Defendant officers to pursue an alternative made available to them under a Detroit Police Department policy directive would be, at most, one factor among many in the Court's Fourth Amendment "reasonableness" inquiry.  Indeed, this would not be an especially weighty factor under the circumstances, where the policy directive conferred only the discretionary authority to leave a vehicle parked at the side of the road, and did not mandate this course of action.  As discussed earlier, a number of other factors weighed in favor of impoundment — most notably, the car was uninsured and could not be operated by anyone on a public roadway, and Officer Sanders explained that the vehicle could be a target of vandalism or theft if left indefinitely on a public street.

As evidenced by the above-cited cases, the courts have consistently found it reasonable to impound a vehicle that would otherwise be left unattended on a public road and without any apparent prospect of prompt retrieval.  The mere existence of alternatives to impoundment has not been deemed sufficient to alter this Fourth Amendment calculus. *See, e.g., Bertine,* 479 U.S. at 373-74, 107 S. Ct. at 742 (rejecting the view that an

27

inventory search should be found unreasonable because the arrestee was not "offered the opportunity to make other arrangements" that would have avoided the impoundment of his vehicle); *Collins,* 892 F.2d at 493 ("The fourth amendment reasonableness standard does not turn on the availability of less intrusive alternatives."); *Cherry,* 436 F.3d at 775 (observing that the Fourth Amendment does not "demand that police offer a motorist an alternative means of removing his vehicle that will avoid the need to tow it and conduct an inventory search"); *Vega-Encarnación,* 344 F.3d at 41 (explaining that "law enforcement officials are not required to give arrestees the opportunity to make arrangements for their vehicles when deciding whether impoundment is appropriate"); *Rodriguez-Morales,* 929 F.2d at 786 ("When a motor vehicle is left without a licensed driver in the course of a lawful highway stop, the Constitution only requires the police to act reasonably with regard to the disposition of the vehicle," and "[t]here is no requirement that the officers must select the least intrusive way of fulfilling their community caretaking responsibilities."); *Poole,* 501 N.W.2d at 267 ("The fact that there may have been less intrusive ways to achieve the legitimate goals of an inventory search . . . does not make the decision to impound the vehicle unlawful.").  Likewise, in this case, the Court has already concluded that the Defendant officers had reasonable and permissible grounds for deciding to impound Plaintiff's vehicle, and Plaintiff has failed to suggest how this decision was rendered unconstitutional by virtue of the officers' failure to pursue and offer Plaintiff an arguably available alternative to this lawful course of

action.[14]

Having decided to impound Plaintiff's vehicle, the Defendant officers proceeded to conduct an inventory search of the vehicle, and this search led to the discovery of a handgun that formed the basis for criminal weapons charges against Plaintiff.  Although the Defendant officers were required to perform this inventory search in accordance with standard police procedures, *see Opperman,* 428 U.S. at 376, 96 S. Ct. at 3100, Plaintiff has neither alleged nor produced any evidence that the officers failed to do so. Accordingly, because the decision to impound Plaintiff's vehicle and the ensuing inventory search comported with the Fourth Amendment, and because the discovery of a weapon during this lawful search provided probable cause for Plaintiff's arrest and prosecution on weapons charges, it follows that the Defendant officers are entitled to summary judgment in their favor on Plaintiff's § 1983 claims arising from his arrest, imprisonment, and prosecution in the wake of the June 24, 2009 traffic stop of his

---

[14]Apart from contending that their decision to impound Plaintiff's vehicle did not run afoul of the Fourth Amendment, the Defendant officers have appealed to qualified immunity as shielding them from liability for any possible transgression of Plaintiff's constitutional rights in the course of their impoundment and inventory search of Plaintiff's vehicle.  In light of the case law surveyed in this opinion, it certainly cannot be said that a reasonable police officer in Defendants' position would have known that the decision to impound Plaintiff's vehicle would amount to a violation of Plaintiff's clearly established rights under the Fourth Amendment. Indeed, Plaintiff has not cited any case in which a federal court has found a Fourth Amendment violation under circumstances comparable to those presented here.  Thus, even if the record in this case could be viewed as raising issues of fact as to the lawfulness of the Defendant officers' decision to impound Plaintiff's vehicle, the Court readily concludes that the officers would be entitled to qualified immunity against liability for any such Fourth Amendment violation.

vehicle.[15]

Finally, Plaintiff has asserted § 1983 claims against the Defendant City of Detroit, based on the proposition that the Defendant officers were acting pursuant to City of Detroit policies or customs when they allegedly violated his federal constitutional rights. Because Plaintiff has failed as a matter of law to establish a constitutional violation by any of the three individual Defendant police officers, his § 1983 claims against the Defendant City fail for lack of an underlying constitutional violation that could be attributed to the municipality. *See Watkins v. City of Battle Creek,* 273 F.3d 682, 687 (6th Cir. 2001); *Scott v. Clay County,* 205 F.3d 867, 879 (6th Cir. 2000).[16]

---

[15]As noted earlier, Plaintiff's complaint briefly alludes to a subsequent arrest in December of 2009, and Plaintiff seemingly suggests in his response to Defendants' motion that this arrest provides an additional basis for his § 1983 claims in this case. (*See* Plaintiff's Response Br. at 8.)  The record, however, is utterly devoid of evidence regarding the facts and circumstances surrounding this arrest or the role (if any) of the Defendant officers in this arrest or any ensuing prosecution.  Moreover, Plaintiff's response brief includes only the most cursory of references to this alleged incident in December of 2009, without any effort to marshal any evidentiary support for any claims arising from this incident or to develop any legal argument in support of any such claims.  Accordingly, the Court finds that Plaintiff has abandoned any § 1983 claims he might have asserted arising from this later incident.

[16]Having now resolved all of the federal claims asserted in Plaintiff's complaint, the Court declines to retain and exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.  *See* 28 U.S.C. § 1367(c)(3).  Rather, these claims will be dismissed without prejudice.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants' April 30,

2011 motion for summary judgment (docket #17) is GRANTED IN PART, to the extent

that it seeks an award of summary judgment in Defendants' favor as to Plaintiff's federal

claims under 42 U.S.C. § 1983, and is otherwise DENIED WITHOUT PREJUDICE.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated:  March 13, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record
on March 13, 2012, by electronic and/or ordinary mail.

s/Ruth A. Gunther_____
Case Manager

31